Christopher T. Micheletti (SBN 136446)
Judith A. Zahid (SBN 215418)
Qianwei Fu (SBN 242669)
**ZELLE LLP**
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone: (415) 693-0700
Facsimile:  (415) 693-0770
cmicheletti@zelle.com
jzahid@zelle.com
qfu@zelle.com

James R. Martin (SBN 173329)
Jennifer Duncan Hackett (*pro hac vice forthcoming*)
Miriam R. Vishio (*pro hac vice forthcoming*)
**ZELLE LLP**
1775 Pennsylvania Avenue, NW, Suite 375
Washington, D.C. 20006
Telephone: (202) 899-4100
jmartin@zelle.com
jhackett@zelle.com
mvishio@zelle.com

***Attorneys for Plaintiff and the Proposed Indirect-Purchaser Classes***

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES WALNUM,<br><br>                          Plaintiff,<br><br>vs.<br><br>HEADWAY TECHNOLOGIES, INC., HUTCHINSON TECHNOLOGY INC., MAGNECOMP PRECISION TECHNOLOGY PUBLIC CO. LTD., NAT PERIPHERAL (DONG GUAN) CO., LTD., NAT PERIPHERAL (H.K.) CO., LTD., NHK SPRING CO., LTD., NHK INTERNATIONAL CORPORATION, NHK SPRING (THAILAND) CO., LTD., SAE MAGNETICS (H.K.) LTD., AND TDK CORPORATION,<br><br>                          Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

1

**TABLE OF CONTENTS**

2  I.    INTRODUCTION .................................................................................. 1

3  II.   JURISDICTION AND VENUE ............................................................. 2

4  III.  THE PARTIES...................................................................................... 3

5        NHK Defendants.................................................................................. 4

6        TDK Defendants .................................................................................. 5

7  IV.   AGENTS AND CO-CONSPIRATORS ................................................ 6

8  V.    INTERSTATE TRADE AND COMMERCE ........................................ 6

9  VI.   FACTUAL ALLEGATIONS ................................................................ 7

10       A.   HDDs and Suspension Assemblies.............................................. 7

11       B.   Structural Characteristics of the HDD Suspension Assembly Market ................... 9

12            1.   Market Consolidation and Concentration ................................ 10

13            2.   Interrelated Business Relationships ......................................... 11

14            3.   High Barriers to Entry............................................................ 12

15            4.   Market Maturity .................................................................... 13

16            5.   Homogeneity of Products ....................................................... 13

17       C.   Defendants' Unlawful Price-Fixing and Market Allocation Agreement............. 13

18       D.   Government Investigations .................................................... 14

19  VII.  CLASS ACTION ALLEGATIONS ...................................................... 16

20  VIII. PLAINTIFF AND THE CLASSES SUFFERED ANTITRUST INJURY...................... 20

21  IX.   PLAINTIFF'S CLAIMS ARE TIMELY ............................................. 23

22       A.   Defendants Have Engaged in A Continuing Violation......................... 23

23       B.   Fraudulent Concealment Tolled the Statute of Limitations.................... 24

24  X.    VIOLATIONS ALLEGED.................................................................... 24

25       A.   First Claim for Relief:  Violation of Section 1 of the Sherman Act ................. 24

26       B.   Second Claim for Relief:  Violation of State Antitrust Statutes ................... 26

27       C.   Third Claim for Relief:  Violation of State Consumer Protection Statutes .......... 45

28

i

        D.      Fourth Claim for Relief:  Unjust Enrichment ......................................................... 79

XI.    PRAYER FOR RELIEF ................................................................................................... 80

XII.   DEMAND FOR JURY TRIAL ....................................................................................... 82

CLASS ACTION COMPLAINT

Plaintiff James Walnum ("Plaintiff"), and on behalf of a Class of all those similarly situated in the United States, brings this action for damages and injunctive relief under state and federal antitrust, unfair competition, and consumer protection laws against the Defendants named herein, demanding trial by jury, and complaining and alleging as follows:

## I.    **INTRODUCTION**

1.    Plaintiff brings this antitrust class action on behalf of individuals and entities that indirectly purchased hard disk drive ("HDD") suspension assemblies (hereinafter referred to as "HDD Suspension Assemblies") in the United States from Defendants, their predecessors, any subsidiaries or affiliates thereof, or any of their named and unnamed co-conspirators, during the period beginning at least as early as May 2008 until such time as the anticompetitive effects of the Defendants' conduct on United States consumers of such products ceased (the "Class Period").

2.    As further detailed below, from at least May 2008 through at least April 2016, Defendants entered into agreements with each other to refrain from price competition and allocate their respective market shares for suspension assemblies used in HDDs.    Pursuant to their agreements not to compete, Defendants exchanged pricing information including anticipated pricing quotes, which they used to inform their negotiations with U.S. and foreign customers that purchased suspension assemblies and produced HDDs for sale in, or delivery to, the U.S. and elsewhere.    As a proximate result of these agreements, Defendants charged artificially high prices for HDD Suspension Assemblies.

3.    HDD Suspension Assemblies are a crucial component of HDDs.  In announcing a guilty plea by Defendant NHK Spring Co., Ltd., Assistant Attorney General Makan Delrahim of the Antitrust Division of the United States Department of Justice ("DOJ") said: "[w]hile these parts are physically small, they are critical to the operation and performance of electronic devices, and their impact on American consumers and businesses is direct and substantial."

4.    Defendants' collusive conduct is being investigated by the Antitrust Division of the United States Department of Justice ("DOJ"), and by several other international competition

CLASS ACTION COMPLAINT

authorities.  On July 29, 2019, the DOJ filed a one-count charge against NHK Spring Co., Ltd. for alleged violation of the Sherman Act.  NHK pleaded guilty and agreed to pay $28.5 million in criminal fines and to cooperate in the ongoing investigation.

## II.    JURISDICTION AND VENUE

5.    This action is instituted under Section 16 of the Clayton Act, 15 U.S.C. § 26, to obtain injunctive relief for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, to recover damages under state antitrust, unfair competition, and consumer protection laws, and to recover costs of suit, including reasonable attorneys' fees, for the injuries that Plaintiff and all others similarly situated sustained as a result of the Defendants' violations of those laws.

6.    The Court has subject matter jurisdiction over the federal claim under 28 U.S.C. §§ 1331 and 1337. The Court has subject matter jurisdiction over the state law claims under 28 U.S.C. § 1367 because those claims are so related to the federal claim that they form part of the same case or controversy.

7.    This court also has subject matter jurisdiction over the state law claims pursuant to the Class Action Fairness Act of 2005, which amended 28 U.S.C. § 1332 to add a new subsection (d) conferring federal jurisdiction over class actions where, as here, "any member of a class of Plaintiffs is a citizen of a state different from any Defendant and the aggregated amount in controversy exceeds $5,000,000, exclusive of interest and costs."  This Court also has jurisdiction under 28 U.S.C. § 1332(d) because "one or more members of the class is a citizen of a state within the United States and one or more of the Defendants is a citizen or subject of a foreign state."

8.    Venue is proper in this Judicial District pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22) and 28 U.S.C. § 1391 (b), (c) and (d), because during the Class Period one or more of the Defendants resided, transacted business, was found, or had agents in, this district, and because a substantial part of the events giving rise to Plaintiff's claims occurred in this district, and a substantial portion of the affected portion of the interstate trade and commerce described below has been carried out in this district.

9.     This Court has personal jurisdiction over each of the Defendants because each Defendant, either directly or through the ownership or control of its United States subsidiaries: (a) transacted business in the United States, including in this District; (b) directly or indirectly sold or marketed substantial quantities of HDD Suspension Assemblies throughout the United States, including in this District; (c) had substantial aggregate contacts with the United States as a whole, including in this District; and/or (d) was engaged in an illegal antitrust conspiracy that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to, the business or property of persons and entities residing in, located in, or doing business throughout the United States, including in this District.  Defendants conduct business throughout the United States, including in this District, and they have purposefully availed themselves of the laws of the United States.

10.    The activities of Defendants and their co-conspirators were within the flow of, were intended to, and did have, a substantial effect on international commerce and the interstate commerce of the United States.  HDD Suspension Assemblies manufactured abroad and sold for use in products in the United States are goods brought into the United States for sale, and as such, Defendants' activities had a direct, substantial and reasonably foreseeable effect on the United States commerce.

11.    Defendants' anticompetitive conduct, and such conduct's effect on commerce in the United States, as described in this Complaint, proximately caused, and continues to cause, antitrust injury to members of the Classes.

12.    Defendants' collusive conduct was intended to, and did, cause injury to Plaintiff and the Classes, who indirectly purchased Defendants' and their co-conspirators' HDD Suspension Assemblies.  Defendants expressly aimed their conspiracy at the U.S. marketplace and their collusive conduct has resulted in an adverse monetary effect on indirect purchasers in each state identified herein.

### III.    THE PARTIES

13.    Plaintiff James Walnum is a resident of California.  During the Class Period, Mr.

3

Walnum purchased HDD Suspension Assemblies indirectly from at least one Defendant, and was thus injured in his business or property as a result of Defendants' unlawful conduct alleged herein.

**NHK Defendants**

14.    Defendant NHK Spring Co., Ltd. ("NHK Spring") is a Japanese corporation with its principal place of business located at 3-10 Fukuura, Kanazawa-ku, Yokohama, 236-0004, Japan.  During the Class Period, NHK Spring manufactured, marketed, sold and/or distributed HDD Suspension Assemblies, either directly or indirectly through its subsidiaries or affiliates, to customers in the United States.

15.    Defendant NHK International Corporation ("NHK International") is a U.S. subsidiary established by NHK Spring in October 1976, with its principal place of business located at 46855 Magellan Drive, Novi, Michigan 48377. During the Class Period, NHK International supplied, serviced, and/or sold HDD Suspension Assemblies, either directly or indirectly through its subsidiaries or affiliates, to customers in the United States.

16.    Defendant NHK Spring (Thailand) Co., Ltd. ("NHK Thailand") is a Thailand-based subsidiary of NHK Spring, with its principal place of business located at Bangna Tower A, 6th-7th floor 2/3 Moo 14, Bangna-Trad Rd., (km. 6.5), Bangkaew, Bangplee, Samutprakarn 10540 Thailand. During the Class Period, NHK Thailand manufactured and/or supplied HDD Suspension Assemblies, either directly or indirectly through its subsidiaries or affiliates, to customers in the United States.

17.    Defendant NAT Peripheral (Dong Guan) Co., Ltd. ("NAT DongGuan") is a China-based subsidiary of NHK Spring, with its principal place of business located at Conrad Hi-Tech Park, Shangsha, ZhenAn Road, ChangAn Town, Dongguan, Guangdong, 523830 China.  During the Class Period, NAT DongGuan manufactured and/or supplied HDD Suspension Assemblies, either directly or indirectly through its subsidiaries or affiliates, to customers in the United States.

18.    Defendant NAT Peripheral (H.K.) Co., Ltd. ("NAT H.K.") is a China-based

subsidiary wholly owned by NHK Spring, with its principal place of business located at Suite 15b-17, 9/F, Tower 3, China Hong Kong City, 33 Canton Rd., T.S.T., Kowloon, Hong Kong. During the Class Period, NAT H.K. manufactured and/or supplied HDD Suspension Assemblies, either directly or indirectly through its subsidiaries or affiliates, to customers in the United States.

**TDK Defendants**

19.     Defendant TDK Corporation ("TDK") is a Japanese corporation with its principal place of business located at 2-5-1 Nihonbashi, Chuo-ku, Tokyo, 103-6128, Japan.  TDK has a California-based branch located at 1745 Technology Drive, Suite 200, San Jose, CA 95110. During the Class Period, TDK manufactured, marketed and/or sold HDD Suspension Assemblies, either directly or indirectly through its subsidiaries or affiliates, to customers in the United States.

20.     Defendant Magnecomp Precision Technology Public Co. Ltd. ("MPT") is a Thailand-based subsidiary of TDK, with its principal place of business located at 162 M.5 Phaholyothin Road, T.Lamsai A.Wangnoi, Ayutthaya 13170, Thailand.   During the Class Period, MPT manufactured, marketed and/or sold HDD Suspension Assemblies, either directly or indirectly through its subsidiaries or affiliates, to customers in the United States.

21.     Defendant SAE Magnetics (H.K.) Ltd. ("SAE Magnetics") is a China-based subsidiary wholly owned by TDK, with its principal place of business located at 6 Science Park East Avenue, Hong Kong Science Park, Hong Kong, China.  During the Class Period, SAE Magnetics manufactured and/or supplied HDD Suspension Assemblies, either directly or indirectly through its subsidiaries or affiliates, to customers in the United States.

22.     Defendant Hutchinson Technology Inc. ("Hutchinson") is a Minnesota corporation with its principal place of business located at 40 West Highland Park Drive NE, Hutchinson, Minnesota 55350.  TDK acquired Hutchinson on October 6, 2016.[1]  During the Class Period,

---

[1] *TDK Corporation Announces Completion of Hutchinson Acquisition*, TDK Global (Oct. 6, 2016), *available at* https://www.tdk.com/corp/en/news_center/press/201610062540.htm; TDK

1  Hutchinson manufactured, marketed and/or sold HDD Suspension Assemblies, either directly
2  or indirectly through its subsidiaries or affiliates, to customers in the United States.

3      23.    Defendant Headway Technologies, Inc. ("Headway") is a Delaware corporation
4  wholly owned by TDK, with its principal place of business located at 682 South Hillview Drive,
5  Milpitas, California 95035.  Headway provides recording head products to the HDD industry
6  and employs approximately 800 people in engineering, manufacturing and administration roles
7  in Milpitas, California.  During the Class Period, Headway manufactured and/or supplied HDD
8  Suspension Assemblies, either directly or indirectly through its subsidiaries or affiliates, to
9  customers in the United States.

10              **IV.    AGENTS AND CO-CONSPIRATORS**

11      24.    On information and belief, other corporations, partnerships, or business entities,
12  currently unknown to Plaintiff, are co-conspirators with Defendants in their unlawful restraints
13  of trade.  Various persons that are not named as Defendants have participated as co-conspirators
14  in the violations alleged herein and have performed acts and made statements in furtherance
15  thereof.

16      25.    These other persons or entities have facilitated, adhered to, participated in, and/or
17  communicated with others regarding the alleged conspiracy to fix the prices of, and allocate
18  market shares for, HDD Suspension Assemblies.  Plaintiff reserves the right to name some or
19  all of these entities as Defendants at a later date.

20          **V.    INTERSTATE TRADE AND COMMERCE**

21      26.    Throughout the Class Period, each Defendant, or one or more of its subsidiaries,
22  sold HDD Suspension Assemblies in the United States in a continuous and uninterrupted flow
23  of interstate and international commerce, including through and into this judicial district.

24      27.    During the Class Period, Defendants collectively controlled the vast majority of
25  the market for HDD Suspension Assemblies, both globally and in the United States.

26  2016 Annual Report, at 46, *available at*
27  http://www.annualreports.com/HostedData/AnnualReportArchive/t/OTC_TTDKY_2016.pdf.

28
CLASS ACTION COMPLAINT

28.     Defendants' unlawful activities, as described herein, took place within the flow of interstate commerce to purchasers of HDD Suspension Assemblies located in states other than the states in which Defendants are located, as well throughout the world, and had a direct, substantial and reasonably foreseeable effect upon interstate and international commerce, including the United States markets for HDD Suspension Assemblies.

## VI.     FACTUAL ALLEGATIONS

### A.     HDDs and Suspension Assemblies

29.     HDDs use magnetic recording heads to read from and write onto rapidly spinning disks.  An HDD is a non-volatile memory hardware device that permanently stores and retrieves information.  HDDs store digital content such as documents, pictures, music, videos, programs, application preferences, and operating systems.  HDDs can be external or internal.  They can be found in portable hard drives, desktop or laptop computers, game consoles, set-top boxes/DVRs, network servers, and enterprise storage arrays in data centers.  Their usage covers four broad segments: desktop HDDs, mobile (laptop) HDDs, enterprise HDDs, and consumer electronics HDDs.  During the Class Period, over four billion units of HDDs were shipped worldwide.[2]

30.     An HDD consists of one or more disk platters positioned around a motor-driven spindle hub that rotates the disks.  Each disk has data recorded electromagnetically in concentric circles, or tracks, on the disk.  A magnetic head, similar to a phonograph arm but in a relatively fixed position, reads or writes the information on the tracks.  Two heads, one on each side of a disk, read or write the data as the disk spins.  Figure 1 below shows the physical structure of an HDD.

---

[2] *See Worldwide Unit Shipments of Hard Disk Drives (HDD) from 1976 to 2022, available at* https://www.statista.com/statistics/398951/global-shipment-figures-for-hard-disk-drives/; *Market Views: Hard Drive Shipments Drop by Nearly 17% in 2015*, AnandTech (Mar. 2, 2016), *available at* https://www.anandtech.com/show/10098/market-views-2015-hard-drive-shipments; *Seagate and Western Digital Led the HDD Market Last Year,* Market Realist (Jun. 29, 2017), *available at* https://marketrealist.com/2017/06/seagate-and-western-digital-led-the-hdd-market-last-year/.

CLASS ACTION COMPLAINT



Figure 1.  Physical Structure of Hard Disk[3]

31.    Suspension assemblies hold the recording heads in close proximity to the disks and provide the electrical connection from the recording heads to the hard disk drives' circuitry.[4]  Suspension assemblies are a critical component to position the magnetic read/write head above the data on the surface of the spinning disks in the HDD.  The distance between the read/write head and the disk platter is referred to as "flying height."  The accuracy of this positioning over the tracks on the disk is a large determinant of areal density and subsequently each disk's data capacity.  A modern disk drive's flight height is smaller than the circuit size of today's most modern microprocessors.  The suspension has a built-in actuator that is controlled to hold the head within a very small tolerance of the centerline of the data track.[5]

[3] Roger Wood, *Future Hard Disk Drive Systems,* Journal of Magnetism and Magnetic Materials, Vol. 321, Issue 6 (March 2009).

[4] *Core Business – Suspension Assemblies, available at* https://www.magnecomp.com/Home/Core.

[5] *What Is A Suspension Assembly?*, *available at* http://www.magnecomp.com/Education/edu?view=01.

CLASS ACTION COMPLAINT

1  32.    The suspension assembly consists of three main components that are welded to

2  each other: a base plate, a load beam, and a flexure, as shown in the exploded view in Figure 2

3  below.



Figure 2.  HDD Suspension Assembly[6]

17  33.    Defendants manufacture and sell HDD Suspension Assemblies to HDD

18  manufacturers, which in turn sell HDDs containing the assemblies to manufacturers of products

19  that include HDDs or directly to consumers.

20  **B.    Structural Characteristics of the HDD Suspension Assembly Market**

21  34.    The structural characteristics of the HDD Suspension Assembly market are

22  conducive to the type of effective collusive activity alleged in this Complaint.    These

23  characteristics include high market concentration through the consolidation of manufacturers,

24  interrelated business relationships, significant barriers to entry, maturity of the HDD

25  _____

26  [6] Kazemi M.R., Suspension Assembly for Hard Disk Drive (2013), in Wang Q.J., Chung Y.W. (eds) Encyclopedia of Tribology, *available at*
27  https://link.springer.com/referenceworkentry/10.1007%2F978-0-387-92897-5_1140.

28

CLASS ACTION COMPLAINT

Suspension Assembly market, and homogeneity of products.

### 1. Market Consolidation and Concentration

35. A concentrated market is more susceptible to effective collusion and other anticompetitive practices. The HDD Suspension Assembly industry was highly concentrated during the Class Period.

36. The demand for HDD Suspension Assemblies depends on the demand for HDDs which in turn is driven by the demand for HDD-based capacity, primarily fueled by the ever-expanding consumer storage consumption and enterprise storage requirements.

37. More than 200 companies have manufactured HDDs over time, most of which disappeared through bankruptcy or acquisitions. By 2008, consolidations had concentrated production to just a handful of HDD manufacturers. Consolidation continued during the Class Period. Today, only three HDD manufacturers remain: Western Digital Corporation, Seagate Technology, LLC, and Toshiba Electronics Devices & Storage Corporation. Their market shares are approximately 40%, 37%, and 23% respectively.[7]

38. As the HDD market became increasingly concentrated, the Suspension Assembly industry experienced a similar trend of consolidation.

39. By 2005, Hutchinson held approximately 55% of the world market share and NHK Spring accounted for approximately 22% of the world market share in the suspension assembly industry.[8] MPT, created through the 2005 merger between the Data Storage Division of Magnecomp International Ltd. and KR Precision Public Company, occupied roughly 20% of the market.[9]

---

[7] Forbes (Feb. 5, 2018), *HDD Growth in Nearline Markets, available at* https://www.forbes.com/sites/tomcoughlin/2018/02/05/hdd-growth-in-nearline-markets/#2347c9b62997.

[8] MPT 2005 Form 56-1, at 10, *available at* http://capital.sec.or.th/webapp/corp_fin/datafile/56/20050520E06.DOC.

[9] *Id.*; News Release (Feb. 2, 2005), *KR Precision Implements New Management Structure and Appoints New Director*, *available at* http://www.idema.org/wp-content/downloads/1171.doc.

40.   Further consolidation took place shortly before and during the Class Period.  In 2007, TDK announced its acquisition of a majority share of Thailand-based MPT and began producing HDD Suspension Assemblies following the acquisition.

41.   By 2012, TDK, NHK Spring, and Hutchinson collectively controlled 96% of the global suspension market.[10]

42.   In October 2016, TDK acquired Hutchinson, increasing TDK's market share to 55-60%.  Following the acquisition, TDK and NHK became the world's only two primary producers of HDD Suspension Assemblies.[11]

43.   Collectively, Defendants controlled over 95% of the global market for HDD Suspension Assemblies throughout the Class Period.

### 2.   Interrelated Business Relationships

44.   The HDD Suspension Assembly industry has a close-knit nature whereby multiple business relationships between Defendants blurred the lines of competition and provided ample opportunity to collude.  These business relationships also created a unity of interest among Defendants so that the conspiracy was easier to implement and enforce than if such interrelationships did not exist.

45.   For example, until March of 2015, TDK and NHK Spring—two of the only three major competitors in the suspension assembly market—maintained a joint venture to manufacture suspension assemblies. Specifically, TDK's wholly owned subsidiary SAE Magnetics operated a joint venture with NHK Spring in the suspension assembly manufacturing company NAT H.K.[12]  Throughout the Class Period, SAE Magnetics was also one of

---

[10] Dr. R. Castellano, *The Dynamics of the HDD Industry and Its Impact on CMP*, at 9, *available at* https://nccavs-usergroups.avs.org/wp-content/uploads/CMPUG2012/CMP2012_9castellano.pdf.

[11] 2017 TDK Corporation Annual Report, at 45, *available at* https://www.tdk.com/ir/ir_library/annual/2017/html/index.html.

[12] *See TDK Subsidiary Dissolve Joint Venture of HDD Suspension Manufacturing Company, available at* https://www.tdk.com/corp/en/news_center/press/201504011768.htm; Hutchinson 2012 Form 10-K, at 4 ("[o]ur principal competitors for suspension assemblies are Nihon Hatsujo

1  Hutchinson's top three customers.[13]  In addition, Defendants also cross-licensed each others'
2  products, including suspension assemblies.[14]

3         **3.    High Barriers to Entry**

4         46.    A collusive arrangement that raises product prices above competitive levels
5  would, under basic economic principles, attract new entrants seeking to benefit from the supra-
6  competitive pricing.  Where, however, there are significant barriers to entry, new entrants are
7  less likely.  Thus, barriers to entry help to facilitate the formation and maintenance of a
8  successful cartel.

9         47.    There are substantial barriers to entry in the HDD Suspension Assembly industry.
10  It would require substantial time, resources and industry knowledge to even potentially
11  overcome the barriers to entry.  It is also extremely unlikely that a new producer would enter
12  the market in light of the declining demand for HDD products.  As Defendant Hutchinson
13  conceded, "we believe that the number of entities that have the technical capability and capacity
14  for producing precision suspension assemblies or components in large volumes will remain
15  small."[15]

16         48.    Collectively, Defendants also own the majority of patents for HDD Suspension
17  Assemblies.  These patents potentially place a significant and costly burden on potential new
18  entrants, which must avoid infringing on the patents when entering the market with a new
19  product.

22  Kabusikigaisha ('NHK'), Magnecomp Precision Technology Public Company Limited ('MPT'),
23  a subsidiary of TDK Corporation, and NAT Peripheral (H.K.) Co., Ltd. (a joint venture of NHK and TDK Corporation.").

24  [13] *See, e.g.,* Hutchinson 2008 Form 10-K, at 5, 2012 Form 10-K, at 4, and 2015 Form 10-K, at 4.
25  [14] *See Hutchison, Magnecomp Drop Lawsuits, Cooperate,* Minneapolis/St. Paul Business Journal
26  (Dec. 3, 2001), *available at* https://www.bizjournals.com/twincities/stories/2001/12/03/daily8.html.
27  [15] Hutchinson Technology Inc. 2008 Form 10-K, at 6 and 2015 Form 10-K, at 4.

CLASS ACTION COMPLAINT

1

### 4.    Market Maturity

2      49.    Newer industries are typically characterized by rapid growth, innovation and high

3   profits. The HDD Suspension Assembly market is a mature one, and like many mature

4   industries, is characterized by slim profit margins, creating a motivation to collude.

5      50.    Demand for HDDs and therefore for suspension assemblies experienced a general

6   downward trend during the Class Period.  Static or declining demand is another factor which

7   makes the formation of an effective collusive arrangement more likely because it provides a

8   greater incentive to firms to avoid price competition.

9      51.    In addition, increased demand for other types of data storage technology, such as

10  those that utilize solid state storage or flash memory, has limited growth opportunities for disk-

11  drive-based data storage.  This was one of the factors which led Defendants to engage in this

12  alleged price-fixing scheme in order to slow down declining prices.

13          ### 5.    Homogeneity of Products

14     52.    HDD    Suspension    Assemblies    are    commodity-like    products    which    are

15  interchangeable among products of the same type and across manufacturers.  One Defendant's

16  product for a particular application, such as a particular type/size of disk drive (e.g., 2.5"

17  notebook HDD form factor or 3.5" desktop HDD form factor), is substitutable for another's.  It

18  is easier to form and sustain a cartel when the product in question is commodity-like because it

19  is easier to agree on prices to charge and to monitor those prices once an agreement is formed.

20      ### C.    Defendants' Unlawful Price-Fixing and Market Allocation Agreement

21     53.    From at least as early as May 2008 and continuing until at least April 2016,

22  Defendants knowingly entered into and engaged in a conspiracy to suppress and eliminate

23  competition by fixing prices for HDD Suspension Assemblies sold in the United States and

24  elsewhere.

25     54.    To carry out their conspiracy, Defendants engaged in a variety of unlawful

26  activities.  At times, Defendants engaged in discussions and attended meetings during which

27  they reached agreements to refrain from competing on prices for, fix the prices of, and allocate

28

CLASS ACTION COMPLAINT

their respective market shares for, HDD Suspension Assemblies to be sold in the U.S. and globally.

55.    Defendants also exchanged HDD Suspension Assemblies pricing information, including anticipated pricing quotes.  Defendants used the exchanged pricing information to inform their negotiations with U.S. and foreign customers that purchased HDD Suspension Assemblies and produced HDDs for sale in, or delivery to, the United States and elsewhere.

D.    **Government Investigations**

56.    In July 2016, the Japanese Fair Trade Commission ("JFTC") raided Defendants TDK and NHK based on suspicion that the two companies and or their subsidiaries had colluded to fix the prices for HDD suspension components.  On February 9, 2018, the JFTC issued a cease and desist order to both Defendants, finding that they substantially restrained competition in the HDD Suspension Assemblies market by agreeing to maintain sale prices. The JFTC also imposed a 1.1 billion yen (approximately $9.9 million) surcharge on the two companies.[16]

57.    Concurrently with the JFTC investigation, the DOJ opened an investigation into the HDD Suspension Assembly industry for suspicion of potential collusive conduct.  On July 26, 2016, Defendant Hutchinson received a letter from the DOJ requesting documents relating to the investigation and expressed its intent to fully cooperate with the DOJ's investigation.[17] At the time Hutchinson received the DOJ's letter, TDK's pending acquisition of Hutchinson was under review by the U.S. Federal Trade Commission.[18]

58.    Subsequently, in April 2018, the Brazilian antitrust authority Administrative

---

[16] *See JFTC Feb. 9, 2018 Press Release, available at* https://www.jftc.go.jp/houdou/pressrelease/h30/feb/180209_1.html.

[17] *See Hutchinson Technology Provides Update on Legal and Regulatory Actions,* GlobeNewswire (July 27, 2016), *available at* https://www.globenewswire.com/news-release/2016/07/27/859501/0/en/Hutchinson-Technology-Provides-Update-on-Legal-and-Regulatory-Actions.html.

[18] *Id.*

CLASS ACTION COMPLAINT

Council for Economic Defense ("CADE") launched an investigation into allegations that producers colluded to fix prices in the market for hard disk components between 2003 and 2016.  Companies being investigated include Hutchinson, MPT, NHK Spring, TDK, and SAE Magnetics.  At least 38 individuals are also being investigated.[19]

59.    According to the CADE, "there is strong evidence that the cartel agreed prices in response to client quotations, divided markets, shared commercially and competition sensitive information mainly in respect of current and proposed prices for suspension assemblies, private bids of clients, allocation of client demand, production capacity of each company and a usage fee structure with the purpose of stabilizing prices and reducing competition in the sale of suspension assemblies."[20]

60.    On July 29, 2019, the DOJ filed a one-count information against NHK Spring charging the company with fixing prices on HDD Suspension Assemblies.  According to the information, NHK Spring and its co-conspirators participated in the following activities for the purpose of forming and carrying out the conspiracy:

(a)    discussions and meetings during which they reached agreements to refrain from competing on prices for, fix the prices of, and allocate their respective market shares for, HDD Suspension Assemblies sold in the United States and elsewhere;

(b)    exchanging HDD Suspension Assemblies pricing information, including anticipated pricing quotes, in the United States and elsewhere;

(c)    replying on their agreements not to compete and using the exchanged pricing information to inform their negotiations with U.S. and foreign customers that

---

[19] *See* Press Release (Apr. 26, 2018), *CADE's General Superintendence Probes Cartel in the Global Market for Hard Disk Components, available at* http://en.cade.gov.br/cades-general-superintendence-probes-cartel-in-the-global-market-for-hard-disk-components-1; *see also* CADE's General Superintendent Coordination of Antitrust Analysis 4/2018 (SEI No. 0459666), *available at* http://en.cade.gov.br/.

[20] CADE's General Superintendent Coordination of Antitrust Analysis 4/2018 (SEI No. 0459666), *available at* http://en.cade.gov.br/.

CLASS ACTION COMPLAINT

1  purchased HDD Suspension Assemblies and produced HDDs for sale in, or

2  delivery to, the United States and elsewhere;

3  (d)  selling HDD Suspension Assemblies in, or for delivery to, the United States

4  and elsewhere at collusive and noncompetitive prices; and

5  (e)  accepting payment for HDD Suspension Assemblies sold in, or for delivery

6  to, the United States and elsewhere at collusive and noncompetitive prices.

7  61.  On the same day, NHK Spring pleaded guilty to the DOJ's charge and agreed to

8  pay $28.5 million in criminal fines and to cooperate in the ongoing investigation.[21]

9  62.  In announcing NHK Spring's guilty plea, the DOJ noted that HDD Suspension

10  Assemblies "are critical to the operation and performance of electronic devices, and their

11  impact on American consumers and businesses is direct and substantial."[22]

12  **VII.  CLASS ACTION ALLEGATIONS**

13  63.  Plaintiff brings this action individually and as a class action pursuant to the

14  provisions of Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable

15  and injunctive relief on behalf of the following class (the "Nationwide Class"):

16  All persons and entities who, during the Class Period, indirectly
    purchased a product not for resale which included one or more
17  HDD Suspension Assemblies that were manufactured or sold by
    the Defendants, any current or former subsidiary of the
18  Defendants, or any co-conspirator of the Defendants.

19  64.  Plaintiff also brings this action individually and as a class action pursuant to Rule

20  23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to state

21  antitrust, unfair competition, and consumer protection laws as well as common law unjust

22  enrichment on behalf of the following class (the "Damages Class"):

23

24  [21] *See* Press Release (July 29, 2019), *Japanese Manufacturer Agrees to Plead Guilty to Fixing*
    *Prices for Suspension Assemblies Used in Hard Disk Drive, available at*
25  https://www.justice.gov/opa/pr/japanese-manufacturer-agrees-plead-guilty-fixing-prices-
26  suspension-assemblies-used-hard-disk.

27  [22] *Id.*

28
CLASS ACTION COMPLAINT

All persons and entities who, during the Class Period, in the Indirect Purchaser States[23] purchased a product not for resale which included one or more HDD Suspension Assemblies that were manufactured or sold by the Defendants, any current or former subsidiary of the Defendants, or any co-conspirator of the Defendants.

65.    The Nationwide Class and the Damages Class are referred to herein as the "Classes."  Excluded from the Classes are the Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased HDD Suspension Assemblies directly or for resale.

66.    This action has been brought and may properly be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

(a)    The Classes are ascertainable and there is a well-defined community of interest among members of the Classes;

(b)    Based upon the nature of trade and commerce involved and the number of indirect purchaser of HDD Suspension Assemblies, Plaintiff believes that the number of class members is very large, and therefore joinder of all class members is not practicable;

(c)    Plaintiff's claims are typical of class members' claims because Plaintiff indirectly purchased HDD Suspension Assemblies manufactured by one or more Defendants or their co-conspirators, and therefore Plaintiff's claims arise from the same common course of conduct giving rise to the claims of the members of the Classes and the relief sought in common to the Classes;

(d)    The following common questions of law or fact, among others, exist as to the

[23] The Indirect Purchaser States are the states listed in the Second and Third Claims for Relief. These states are: Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Missouri, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Virginia, West Virginia, and Wisconsin.

CLASS ACTION COMPLAINT

members of the Classes:

i.    Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize the prices of HDD Suspension Assemblies sold in the United States;

ii.    The identity of the participants of the alleged conspiracy;

iii.    The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

iv.    Whether the alleged conspiracy violated the Sherman Act, as alleged in the First Claim for Relief;

v.    Whether the alleged conspiracy violated state antitrust, unfair competition, and/or consumer protection laws, as alleged in the Second and Third Claims for Relief;

vi.    Whether Defendants unjustly enriched themselves to the detriment of Plaintiff and members of the Classes, thereby entitling Plaintiff and members of the Classes to disgorgement of all benefits derived by Defendants, as alleged in the Fourth Claim for Relief;

vii.    Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiff and members of the Classes;

viii.    The effect of the alleged conspiracy on the prices of HDD Suspension Assemblies sold in the United States during the Class Period;

ix.    Whether Plaintiff and the members of the Classes had any reason to know or suspect the conspiracy, or any means to discover the conspiracy;

CLASS ACTION COMPLAINT

x.     Whether the Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from Plaintiff and members of the Classes;

xi.    The appropriate injunctive and related equitable relief for the Nationwide Class; and

xii.   The appropriate class-wide measure of damages for the Damages Class.

(e)   These and other questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages;

(f)   After determination of the predominant common issues identified above, if necessary and appropriate, the Classes can be divided into logical and manageable subclasses;

(g)   Plaintiff will fairly and adequately protect the interests of the Classes in that Plaintiff has no interests that are antagonistic to other members of the Classes and has retained counsel competent and experienced in the prosecution of class actions and antitrust litigation to represent them and the Classes;

(h)   A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual joinder of all damaged class members is impractical. The damages suffered by the individual class members are relatively small, given the expense and burden of individual prosecution of the claims asserted in this litigation. Thus, absent the availability of class action procedures it would not be feasible for class members to redress the wrongs done to them.  Even if the class members could afford individual litigation, the court system could not.  Further, individual litigation presents the potential for inconsistent or contradictory judgments and would greatly magnify the delay and expense to all parties and

the court system.  Therefore, the class action device presents far fewer case management difficulties and will provide the benefits of unitary adjudication, economy of scale and comprehensive supervision in a single court;

(i)     Defendants have acted, and/or refused to act, on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief with respect to the Classes as a whole; and

(j)     In the absence of a class action, Defendants would be unjustly enriched because they would be able to retain the benefits and fruits of their wrongful conduct.

**VIII.     <u>PLAINTIFF AND THE CLASSES SUFFERED ANTITRUST INJURY</u>**

67.     Defendants' price-fixing conspiracy had the following effects, among others:

(a)     Price competition has been restrained or eliminated with respect to HDD Suspension Assemblies;

(b)     The prices of HDD Suspension Assemblies have been fixed, raised, maintained, or stabilized at artificially inflated levels;

(c)     Indirect purchasers of HDD Suspension Assemblies have been deprived of free and open competition; and

(d)     Indirect purchasers of HDD Suspension Assemblies paid artificially inflated prices for HDD Suspension Assemblies.

68.     During the Class Period, Plaintiff and the members of the Classes paid supra-competitive prices for HDD suspension assemblies.  HDD manufacturers and other purchasers of HDD Suspension Assemblies passed on inflated prices to Plaintiff and the members of the Classes.  Those overcharges have unjustly enriched Defendants.

69.     The markets for HDDs and HDD Suspension Assemblies are inextricably linked and intertwined because the market for HDD Suspension Assemblies exists to serve the HDD market.  Without the HDDs, the HDD Suspension Assemblies have little to no value because they have no independent utility.

CLASS ACTION COMPLAINT

70.    HDD Suspension Assemblies are identifiable, discrete physical products that remain essentially unchanged when incorporated into an HDD.  As a result, HDD Suspension Assemblies follow a traceable physical chain of distribution from the Defendants to Plaintiff and the members of the Classes, and costs attributable to HDD Suspension Assemblies can be traced through the chain of distribution to Plaintiff and the members of the Classes.

71.    Just as HDD Suspension Assemblies can be physically traced through the supply chain, so can their prices be traced to show that changes in the prices paid by direct purchasers of HDD Suspension Assemblies affect prices paid by indirect purchasers for HDDs containing HDD Suspension Assemblies.

72.    While even a monopolist would increase its prices when the cost of its inputs increased, the economic necessity of passing through cost changes increases with the degree of competition a firm faces.

73.    The economic and legal literature has recognized that unlawful overcharges in a component normally result in higher prices for products containing that price-fixed component. Two antitrust scholars – Professors Robert G. Harris (Professor Emeritus and former Chair of the Business and Public Policy Group at the Haas School of Business at the University of California at Berkeley) and the late Lawrence A. Sullivan (Professor of Law Emeritus at Southwestern Law School and author of the Handbook of the Law of Antitrust) – have observed that "in a multiple-level chain of distribution, passing on monopoly overcharges is not the exception; it is the rule."[24]

74.    As Professor Jeffrey K. MacKie-Mason (Arthur W. Burks Professor for Information and Computer Science and Professor of Economics and Public Policy at the University of Michigan), an expert who presented evidence in a number of indirect purchaser cases involving Microsoft Corporation, said (in a passage quoted in the judicial decision in that case granting class certification):

---

[24] Robert G. Harris & Lawrence A. Sullivan, *Passing on the Monopoly Overcharge: A Comprehensive Policy Analysis*, 128 U. PA. L. REV. 268, 275 (1979).

As is well known in economic theory and practice, at least some of the overcharge will be passed on by distributors to end consumers. When the distribution markets are highly competitive, as they are here, all or nearly the entire overcharge will be passed on through to ultimate consumers. . . . Both of Microsoft's experts also agree upon the economic phenomenon of cost pass through, and how it works in competitive markets. This general phenomenon of cost pass through is well established in antitrust laws and economics as well.[25]

75. The purpose of the conspiratorial conduct of Defendants and their co-conspirators was to raise, fix, rig or stabilize the price of HDD Suspension Assemblies and, as a direct and foreseeable result, the price of products containing HDD Suspension Assemblies. Economists have developed techniques to isolate and understand the relationship between one "explanatory" variable and a "dependent" variable in those cases when changes in the dependent variable are explained by changes in a multitude of variables, even when all such variables may be changing simultaneously. That analysis – called regression analysis – is commonly used in the real world and in litigation to determine the impact of a price increase on one cost in a product (or service) that is an assemblage of costs. Thus, it is possible to isolate and identify only the impact of an increase in the price of HDD Suspension Assemblies on prices for products containing HDD Suspension Assemblies even though such products contain a number of other components whose prices may be changing over time. A regression model can explain how variation in the price of HDD Suspension Assemblies affects changes in the price of assembled products, such as computers. In such models, the price of HDD Suspension Assemblies would be treated as an independent or explanatory variable. The model can isolate how changes in the price of HDD Suspension Assemblies impact the price of products containing HDD Suspension Assemblies while controlling for the impact of other price-determining factors.

76. The precise amount of the overcharge impacting the prices of products containing HDD Suspension Assemblies can be measured and quantified. Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supra-

---

[25] Order re: Class Certification at 13-14, *Coordination Proceedings Special Title (Rule 1550(b)) Microsoft I-VCases*, No. J.C.C.P. No. 4106 (Cal. Sup. Ct. Aug. 29, 2000).

competitive charge passed through the chain of distribution.  Thus, the economic harm to Plaintiff and class members can be quantified.

77.    By reason of the violations of the antitrust law alleged herein, Plaintiff and the members of the Classes have sustained injury to their businesses or property, having paid higher prices for HDD Suspension Assemblies than they would have paid in the absence of the Defendants' illegal contract, combination, or conspiracy, and, as a result, have suffered damages in an amount presently undetermined.  This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

## IX.    PLAINTIFF'S CLAIMS ARE TIMELY

### A.    Defendants Have Engaged in A Continuing Violation

78.    Plaintiff repeats and re-alleges the allegations set forth above.

79.    Plaintiff and members of the Classes had no knowledge of the combination or conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein.

80.    Plaintiff and members of the Classes are consumers who purchased HDDs containing HDD Suspension Assemblies for their own use and not for resale.  No information in the public domain was available to Plaintiff and members of the Classes prior to July 26, 2016.  Moreover, Plaintiff and members of the Classes had no direct contact or interaction with the Defendants and had no means from which they could have discovered that the Defendants were engaged in the combination and conspiracy alleged herein before July 26, 2016.

81.    This Complaint alleges a continuing course of conduct (including conduct within the applicable limitations periods), and Defendants' unlawful conduct has inflicted continuing and accumulating harm within the applicable statutes of limitations.

82.    Each time Defendants engaged in an unlawful act complained of here, Defendants undertook an overt act that has inflicted harm on Plaintiff and other members of the Classes.

83.    Because Defendants have engaged in a continuing course of conduct, Plaintiff's claims are timely.

**B.    Fraudulent Concealment Tolled the Statute of Limitations**

84.    In the alternative, application of the doctrine of fraudulent concealment tolled the statute of limitations on the claims asserted herein by Plaintiff and the Classes.  Plaintiff and members of the Classes did not discover, and could not discover through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until July 26, 2016, the date that the JFTC's raid on Defendants TDK and NHK became public.

85.    Before that time, Plaintiff and members of the Classes were unaware of Defendants' unlawful conduct, and did not know before then that they were paying supra-competitive prices for HDD Suspension Assemblies throughout the United States during the Class Period.  No information, actual or constructive, was ever made available to Plaintiff and members of the Classes that even hinted to Plaintiff that they were being injured by Defendants' unlawful conduct.

86.    By its very nature, the Defendants' and their co-conspirators' anticompetitive conspiracy was inherently self-concealing.  HDD Suspension Assemblies are not exempt from antitrust regulation and, thus, Plaintiff and members of the Classes reasonably considered the HDD Suspension Assemblies industry to be a competitive industry.   Accordingly, a reasonable person under the circumstances would not have been alerted to begin to investigate the legitimacy of Defendants' HDD Suspension Assemblies prices before July 26, 2016.

87.    Because the alleged conspiracy was self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiff and members of the Classes had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed, until July 26, 2016.

88.    For these reasons, the statute of limitations applicable to Plaintiff' and the Classes' claims was tolled and did not begin to run until July 26, 2016.

## X.    VIOLATIONS ALLEGED

**A.    First Claim for Relief:  Violation of Section 1 of the Sherman Act**

89.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

90.    Beginning at a time unknown to Plaintiff, but at least as early as May 2008, through at least April 2016, the exact dates being unknown to Plaintiff and exclusively within the knowledge of Defendants, Defendants and their co-conspirators, entered into a continuing agreement, understanding, and conspiracy to unreasonably restrain trade and commerce in the United States, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

91.    The acts done by the Defendants as part of, and in furtherance of, their and their co-conspirators' contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of their affairs.

92.    The contract, combination or conspiracy consisted of a continuing agreement, understanding and concert of action among Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the prices of HDD Suspension Assemblies they sold in the United States and elsewhere.

93.    The anticompetitive acts were intentionally directed at the United States market for HDD Suspension Assemblies and had a substantial and foreseeable effect on interstate commerce by raising and fixing prices for HDD Suspension Assemblies throughout the United States.

94.    The conspiratorial acts and combinations have caused unreasonable restraints in the markets for HDD Suspension Assemblies.

95.    As a result of Defendants' unlawful conduct, Plaintiff and other similarly situated indirect purchasers in the Nationwide Class who purchased HDD Suspension Assemblies have been harmed by being forced to pay inflated, supra-competitive prices for HDD Suspension Assemblies.

96.    In formulating and carrying out the alleged agreement, understanding and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth herein.

97.    Defendants' conspiracy had the following effects, among others:

(a)    Price competition in the market for HDD Suspension Assemblies has been restrained, suppressed, and/or eliminated in the United States;

(b)    Prices for HDD Suspension Assemblies sold by Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States; and

(c)    Plaintiff and members of the Nationwide Class who purchased HDD Suspension Assemblies indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

98.    Plaintiff and members of the Nationwide Class have been injured and will continue to be injured in their business and property by paying more for HDD Suspension Assemblies purchased indirectly from Defendants and their co-conspirators than they would have paid and will pay in the absence of the conspiracy.

99.    The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

100.    Plaintiff and members of the Nationwide Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

B.    **Second Claim for Relief:  Violation of State Antitrust Statutes**

101.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

102.    During the Class Period, Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy with respect to the sale of HDD Suspension Assemblies in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

103.    The contract, combination, or conspiracy consisted of an agreement among Defendants and their co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive levels the prices for HDD Suspension Assemblies and to allocate customers for these products in the United States.

104. In formulating and effectuating this conspiracy, Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

(a) participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price HDD Suspension Assemblies at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiff and members of the Damages Class with respect to HDD Suspension Assemblies sold in the United States;

(b) allocating customers and markets for HDD Suspension Assemblies in the United States in furtherance of their agreements; and participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

105. Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate customers with respect to HDD Suspension Assemblies.

106. Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

107. Defendants have entered into an unlawful agreement in restraint of trade in violation of the **Arizona Uniform State Antitrust Act**, Ariz. Rev. Stat. §§ 44-1401, *et seq.*

(a) Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Arizona; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Arizona; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b) During the Class Period, Defendants' illegal conduct substantially affected

1    Arizona commerce.

2    (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff

3    and members of the Damages Class have been injured in their business and

4    property and are threatened with further injury.

5    (d)    By reason of the foregoing, Defendants entered into agreements in restraint

6    of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.* Accordingly,

7    Plaintiff and members of the Damages Class seek all forms of relief

8    available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

9    108.    Defendants have entered into an unlawful agreement in restraint of trade in

10    violation of the **California Cartwright Act**, Cal. Bus. & Prof. Code § 16700, *et seq.*

11    (a)    During the Class Period, Defendants and their co-conspirators entered into

12    and engaged in a continuing unlawful trust in restraint of the trade and

13    commerce described above in violation of the California Cartwright Act.

14    Defendants, each of them, have acted in violation of the Cartwright Act to

15    fix, raise, stabilize, and maintain prices of, and allocate markets for, HDD

16    Suspension Assemblies at supra-competitive levels.

17    (b)    The aforesaid violations of the Cartwright Act, consisted, without limitation,

18    of a continuing unlawful trust and concert of action among the Defendants and

19    their co-conspirators, the substantial terms of which were to fix, raise,

20    maintain, and stabilize the prices of, and to allocate markets for, HDD

21    Suspension Assemblies.

22    (c)    For the purpose of forming and effectuating the unlawful trust, the

23    Defendants and their co-conspirators have done those things which they

24    combined and conspired to do, including but not limited to the acts, practices

25    and course of conduct set forth above and the following: (1) fixing, raising,

26    stabilizing, and pegging the price of HDD Suspension Assemblies; and (2)

27    allocating among themselves the production of HDD Suspension

1    Assemblies.

2    (d)    The combination and conspiracy alleged herein has had, *inter alia*, the

3    following effects: (1) Price competition in the sale of HDD Suspension

4    Assemblies has been restrained, suppressed, and/or eliminated in the State of

5    California; (2) Prices for HDD Suspension Assemblies sold by Defendants

6    and their co-conspirators have been fixed, raised, stabilized, and pegged at

7    artificially high, non-competitive levels in the State of California and

8    throughout the United States; and (3) Those who purchased HDD

9    Suspension Assemblies directly or indirectly from Defendants and their co-

10    conspirators have been deprived of the benefit of free and open competition.

11    (e)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff

12    and members of the Damages Class have been injured in their business and

13    property in that they paid more for HDD Suspension Assemblies than they

14    otherwise would have paid in the absence of Defendants' unlawful conduct.

15    As a result of Defendants' violation of the Cartwright Act, Plaintiff and

16    members of the Damages Class seek treble damages and their cost of suit,

17    including a reasonable attorney's fee, pursuant to Section 16750(a) of the

18    California Business and Professions Code.

19    109.    Defendants have entered into an unlawful agreement in restraint of trade in

20    violation of the **District of Columbia Antitrust Act**, D.C. Code § 28-4501, *et seq.*

21    (a)    Defendants' combinations or conspiracies had the following effects: (1) HDD

22    Suspension Assemblies price competition was restrained, suppressed, and

23    eliminated throughout the District of Columbia; (2) HDD Suspension

24    Assemblies prices were raised, fixed, maintained and stabilized at artificially

25    high levels throughout the District of Columbia; (3) Plaintiff and members of

26    the Damages Class were deprived of free and open competition; and (4)

27    Plaintiff and members of the Damages Class paid supra-competitive,

28

29

artificially inflated prices for HDD Suspension Assemblies.

(b)    During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of D.C. Code § 28-4501, *et seq.*  Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under D.C. Code § 28-4501, *et seq.*

110.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the **Hawaii Antitrust Act**, Haw. Rev. Stat. § 480-4.

(a)    Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Hawaii; (2)  HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Hawaii; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Haw. Rev. Stat. § 480-4.  Accordingly,

Plaintiff and members of the Damages Class seek all forms of relief available under the Hawaii Antitrust Act.

111. Defendants have entered into an unlawful agreement in restraint of trade in violation of the **Iowa Competition Law**, Iowa Code § 553.1, *et seq.*

(a)  Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Iowa; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Iowa; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)  During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce.

(c)  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq.*  Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.1, *et seq.*

112. Defendants have entered into an unlawful agreement in restraint of trade in violation of the **Kansas Restraint of Trade Act**, Kan. Stat. Ann. § 50-101, *et seq.*

(a)  Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Kansas; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout

31

Kansas; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)   During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce.

(c)   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)   By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kan. Stat. Ann. § 50-101, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Kan. Stat. Ann. § 50-101, *et seq*.

113.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the **Maine Antitrust Statute**, Me. Rev. Stat. Ann. tit. 10, § 1101, *et seq*.

(a)   Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Maine; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Maine; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)   During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

(c)   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and

property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Me. Rev. Stat. Ann. tit. 10, § 1101, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under the statute.

114. Defendants have entered into an unlawful agreement in restraint of trade in violation of the **Michigan Antitrust Reform Act**, Mich. Comp. Laws § 445.771, *et seq*.

(a) Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Michigan; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Michigan; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b) During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mich. Comp. Laws § 445.771, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Mich. Comp. Laws § 445.771, *et seq*.

115. Defendants have entered into an unlawful agreement in restraint of trade in violation of the **Minnesota Antitrust Law**, Minn. Stat. § 325D.49, *et seq*.

(a) Defendants' combinations or conspiracies had the following effects: (1) HDD

33

Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Minnesota; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minn. Stat. § 325D.49, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Minn. Stat. § 325D.49, *et seq.*

116.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the **Mississippi Antitrust Statute**, Miss. Code Ann. § 75-21-1, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Mississippi; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)    During the Class Period, Defendants' illegal conduct substantially affected

1    Mississippi commerce.

2    (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff

3    and members of the Damages Class have been injured in their business and

4    property and are threatened with further injury.

5    (d)    By reason of the foregoing, Defendants have entered into agreements in

6    restraint of trade in violation of Miss. Code Ann. § 75-21-1, *et seq.*

7    Accordingly, Plaintiff and members of the Damages Class seek all relief

8    available under Miss. Code Ann. § 75-21-1, *et seq.*

9    117.  Defendants have entered into an unlawful agreement in restraint of trade in

10   violation of the **Nebraska Junkin Act**, Neb. Rev. Stat. § 59-801, *et seq.*

11   (a)    Defendants' combinations or conspiracies had the following effects: (1) HDD

12   Suspension Assemblies price competition was restrained, suppressed, and

13   eliminated throughout Nebraska; (2) HDD Suspension Assemblies prices

14   were raised, fixed, maintained and stabilized at artificially high levels

15   throughout Nebraska; (3) Plaintiff and members of the Damages Class were

16   deprived of free and open competition; and (4) Plaintiff and members of the

17   Damages Class paid supra-competitive, artificially inflated prices for HDD

18   Suspension Assemblies.

19   (b)    During the Class Period, Defendants' illegal conduct substantially affected

20   Nebraska commerce.

21   (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff

22   and members of the Damages Class have been injured in their business and

23   property and are threatened with further injury.

24   (d)    By reason of the foregoing, Defendants have entered into agreements in

25   restraint of trade in violation of Neb. Rev. Stat. § 59-801, *et seq.*

26   Accordingly, Plaintiff and members of the Damages Class seek all relief

27   available under the Junkin Act.

28

35

118. Defendants have entered into an unlawful agreement in restraint of trade in violation of the **Nevada Unfair Trade Practices Act**, Nev. Rev. Stat. § 598A.010, *et seq.*

 (a) Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Nevada; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nevada; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

 (b) During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

 (c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

 (d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nev. Rev. Stat. § 598A.010, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Nev. Rev. Stat. § 598A.010, *et seq.*

119. Defendants have entered into an unlawful agreement in restraint of trade in violation of **New Hampshire's Antitrust Statute**, N.H. Rev. Stat. Ann. tit. XXXI, § 356:1, *et seq.*

 (a) Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiff and members of the

CLASS ACTION COMPLAINT

Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)    During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of N.H. Rev. Stat. Ann. tit. XXXI, § 356:1, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under the statute.

120. Defendants have entered into an unlawful agreement in restraint of trade in violation of the **New Mexico Antitrust Act**, N.M. Stat. § 57-1-1, *et seq*.

(a)    Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)    During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

37

CLASS ACTION COMPLAINT

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of N.M. Stat. § 57-1-1, *et seq*.  Accordingly, Plaintiff and members of the Damages Class seek all relief available under N.M. Stat. § 57-1-1, *et seq*.

121.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the **New York Donnelly Act**, N.Y. Gen. Bus. Law, § 340, *et. seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout New York; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout New York; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies when they purchased HDDs containing HDD Suspension Assemblies.

(b)     During the Class Period, Defendants' illegal conduct substantially affected New York commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of the New York Donnelly Act, § 340, *et seq*. The conduct set forth above is a *per se* violation of the Act.  Accordingly, Plaintiff and members of the Damages Class seek all relief available under New York Gen. Bus. Law § 340, *et seq*.

122.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the **North Carolina General Statutes**, N.C. Gen. Stat. § 75-1, *et seq*.

(a)  Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Carolina; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)  During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce.

(c)  As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of N.C. Gen. Stat. § 75-1, *et seq.*  Accordingly, Plaintiff and members of the Damages Class seek all relief available under N.C. Gen. Stat. § 75-1, *et. seq*.

123.  Defendants have entered into an unlawful agreement in restraint of trade in violation of the **North Dakota Uniform State Antitrust Act**, N.D. Cent. Code § 51-08.1, *et seq*.

(a)  Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Dakota; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for

CLASS ACTION COMPLAINT

HDD Suspension Assemblies.

(b)    During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of N.D. Cent. Code § 51-08.1, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under the statute.

124.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the **Oregon Antitrust Law**, Or. Rev. Stat. § 646.705, *et seq*.

(a)    Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Oregon; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Oregon; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)    During the Class Period, Defendants' illegal conduct had a substantial effect on Oregon commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Or. Rev. Stat. § 646.705, *et seq*. Accordingly,

1  Plaintiff and members of the Damages Class seek all relief available under Or.

2  Rev. Stat. § 646.705, *et seq.*

3  125. Defendants have entered into an unlawful agreement in restraint of trade in

4  violation of the **Rhode Island Antitrust Act**, R.I. Gen. Laws §§ 6-36-1, *et seq.*

5  (a)  Defendants' combinations or conspiracies had the following effects: (1) HDD

6  Suspension Assemblies price competition was restrained, suppressed, and

7  eliminated throughout Rhode Island; (2) HDD Suspension Assemblies prices

8  were raised, fixed, maintained and stabilized at artificially high levels

9  throughout Rhode Island; (3) Plaintiff and members of the Damages Class

10  were deprived of free and open competition; and (4) Plaintiff and members of

11  the Damages Class paid supra-competitive, artificially inflated prices for

12  HDD Suspension Assemblies.

13  (b)  During the Class Period, Defendants' illegal conduct had a substantial effect

14  on Rhode Island commerce.

15  (c)  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff

16  and members of the Damages Class have been injured in their business and

17  property and are threatened with further injury.

18  (d)  By reason of the foregoing, Defendants have entered into agreements in

19  restraint of trade in violation of R.I. Gen. Laws §§ 6-36-1, *et seq.*

20  Accordingly, Plaintiff and members of the Damages Class seek all relief

21  available under R.I. Gen. Laws §§ 6-36-1, *et seq.*

22  126. Defendants have entered into an unlawful agreement in restraint of trade in

23  violation of the **South Dakota Antitrust Statute**, S.D. Codified Laws § 37-1-3.1, *et seq.*

24  (a)  Defendants' combinations or conspiracies had the following effects: (1) HDD

25  Suspension Assemblies price competition was restrained, suppressed, and

26  eliminated throughout South Dakota; (2) HDD Suspension Assemblies prices

27  were raised, fixed, maintained and stabilized at artificially high levels

28

41

throughout South Dakota; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)  During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce.

(c)  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of S.D. Codified Laws Ann. §§ 37-1, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under S.D. Codified Laws Ann. §§ 37-1, *et seq*.

127.  Defendants have entered into an unlawful agreement in restraint of trade in violation of the **Tennessee Trade Practices Act**, Tenn. Code Ann. § 47-25-101, *et seq*.

(a)  Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Tennessee; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)  During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce.

(c)  As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business

1    and property and are threatened with further injury.

2    (d)    By reason of the foregoing, Defendants have entered into agreements in

3    restraint of trade in violation of Tenn. Code Ann. § 47-25-101, *et seq.*

4    Accordingly, Plaintiff and members of the Damages Class seek all relief

5    available under Tenn. Code Ann. § 47-25-101, *et seq.*

6    128.    Defendants have entered into an unlawful agreement in restraint of trade in

7    violation of the **Utah Antitrust Act**, Utah Code Ann. § 76-10-911, *et seq.*

8    (a)    Defendants' combinations or conspiracies had the following effects: (1) HDD

9    Suspension Assemblies price competition was restrained, suppressed, and

10    eliminated throughout Utah; (2) HDD Suspension Assemblies prices were

11    raised, fixed, maintained and stabilized at artificially high levels throughout

12    Utah; (3) Plaintiff and members of the Damages Class were deprived of free

13    and open competition; and (4) Plaintiff and members of the Damages Class

14    paid supra-competitive, artificially inflated prices for HDD Suspension

15    Assemblies.

16    (b)    During the Class Period, Defendants' illegal conduct had a substantial effect

17    on Utah commerce.

18    (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff

19    and members of the Damages Class have been injured in their business and

20    property and are threatened with further injury.

21    (d)    By reason of the foregoing, Defendants have entered into agreements in

22    restraint of trade in violation of Utah Code Ann. § 76-10-3101, *et seq.*

23    Accordingly, Plaintiff and members of the Damages Class seek all relief

24    available under the Utah Antitrust Act.

25    129.    Defendants have entered into an unlawful agreement in restraint of trade in

26    violation of the **West Virginia Antitrust Act**, W. Va. Code § 47-18-1, *et seq.*

27    (a)    Defendants' combinations or conspiracies had the following effects: (1) HDD

28

43

CLASS ACTION COMPLAINT

Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout West Virginia; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)    During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of W. Va. Code § 47-18-1, *et seq.*  Accordingly, Plaintiff and members of the Damages Class seek all relief available under W. Va. Code § 47-18-1, *et seq.*

130.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the **Wisconsin Antitrust Act**, Wis. Stat. § 133.01, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Wisconsin; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)    During the Class Period, Defendants' illegal conduct had a substantial effect

on Wisconsin commerce.

(c)   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)   By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wis. Stat. § 133.01, *et seq*.  Accordingly, Plaintiff and members of the Damages Class seek all relief available under Wis. Stat. § 133.01, *et seq*.

131.   Plaintiff and members of the Damages Class in each of the above states have been injured in their business and property by reason of Defendants' unlawful combination, contract, conspiracy and agreement.  Plaintiff and members of the Damages Class have paid more for HDD Suspension Assemblies than they otherwise would have paid in the absence of Defendants' unlawful conduct.  This injury is of the type the antitrust laws of the above states were designed to prevent and flows from that which makes Defendants' conduct unlawful.

132.   In addition, Defendants have profited significantly from the aforesaid conspiracy.  Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of Plaintiff and the members of the Damages Class.

133.   Accordingly, Plaintiff and the members of the Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a  particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

C.   **Third Claim for Relief:  Violation of State Consumer Protection Statutes**

134.   Plaintiff incorporates by reference the allegations in the preceding paragraphs.

135.   Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

136.   Defendants have knowingly entered into an unlawful agreement in restraint of

45

trade in violation of the **Arkansas Deceptive Trade Practices Act**, Ark. Code Ann. § 4-88-101, *et seq.*

(a) Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in Arkansas and took efforts to conceal their agreements from Plaintiff and members of the Damages Class.

(b) The aforementioned conduct on the part of the Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Ark. Code Ann. § 4-88-107(a)(10).

(c) Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arkansas; (3) Plaintiff and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and the members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(d) During the Class Period, Defendants' illegal conduct substantially affected Arkansas commerce and consumers.

(e) As a direct and proximate result of the unlawful conduct of Defendants, Plaintiff and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

(f) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code Ann. § 4-88-107(a)(10) and, accordingly, Plaintiff and the members of the Damages Class seek all relief available

1     under Ark. Code Ann. § 4-88-113.

2     137. Defendants have engaged in unfair competition or unfair, unconscionable,

3  deceptive or fraudulent acts or practices in violation of the **California Unfair Competition**

4  **Law**, Cal. Bus. & Prof. Code § 17200, *et seq.* (the "UCL"):

(a)     During the Class Period, Defendants marketed, sold, or distributed HDD
        Suspension Assemblies in California, and committed and continue to commit
        acts of unfair competition, as defined by the UCL, by engaging in the acts and
        practices specified above.

(b)     This claim is instituted pursuant to Sections 17203 and 17204 of the UCL, to
        obtain restitution from these Defendants for acts, as alleged herein, that
        violated the UCL.

(c)     The acts, omissions, misrepresentations, practices and non-disclosures of
        Defendants, as alleged herein, constituted a common, continuous, and
        continuing course of conduct of unfair competition by means of unfair,
        unlawful, and/or fraudulent business acts or practices within the meaning of
        the UCL, including, but not limited to, the following: (1) the violations of
        Section 1 of the Sherman Act, as set forth above; (2) the violations of the
        Cartwright Act, set forth above;

(d)     Defendants' acts, omissions, misrepresentations, practices, and non-
        disclosures, as described above, whether or not in violation of the Cartwright
        Act, and whether or not concerted or independent acts, are otherwise unfair,
        unconscionable, unlawful or fraudulent;

(e)     Defendants' acts or practices are unfair to consumers of HDD Suspension
        Assemblies (or products containing them) in the State of California within the
        meaning of the UCL;

(f)     Defendants' acts and practices are fraudulent or deceptive within the meaning
        of the UCL;

(g)    Plaintiff and members of the Damages Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices;

(h)    The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future;

(i)    The unlawful and unfair business practices of Defendants, each of them, have caused and continue to cause Plaintiff and the members of the Damages Class to pay supra-competitive and artificially inflated prices for HDD Suspension Assemblies (or products containing them). Plaintiff and the members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition.

(j)    As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition.    Plaintiff and the members of the Damages Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

138.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **District of Columbia Consumer Protection Procedures Act**, D.C. Code § 28-3901, *et seq.*

(a)    Plaintiff and the Damages Class purchased HDD Suspension Assemblies for personal, family, or household purposes.

(b)    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-

48

competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed or obtained in the District of Columbia.

(c) The foregoing conduct constitutes "unlawful trade practices," within the meaning of D.C. Code § 28-3904. Plaintiff were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for HDD Suspension Assemblies. Defendants had the sole power to set that price and Plaintiff had no power to negotiate a lower price. Moreover, Plaintiff lacked any meaningful choice in purchasing HDD Suspension Assemblies because they were unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiff could avoid the overcharges. Defendants' conduct with regard to sales of HDD Suspension Assemblies, including their illegal conspiracy to secretly fix the price of HDD Suspension Assemblies at supra-competitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiff and the public. Defendants took grossly unfair advantage of Plaintiff. The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for HDD Suspension Assemblies.

(d) Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiff and the Damages Class were

49

deprived of free and open competition; and (4) Plaintiff and the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(e)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury.  Defendants have  engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under the statute.

139.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **Florida Deceptive and Unfair Trade Practices Act**, Fla. Stat. §§ 501.201, *et seq*.

(a)    Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Florida; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury.

(d)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq.*, and, accordingly,

Plaintiff and members of the Damages Class seek all relief available under that statute.

140. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **Hawaii Unfair and Deceptive Trade Practices Act**, Haw. Rev. Stat. § 480-2.

(a) Plaintiff and the Damages Class purchased HDD Suspension Assemblies for personal, family, or household purposes.

(b) Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(c) During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce and consumers.

(d) As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury.

(e) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. § 480-2 and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

141. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **Massachusetts Consumer Protection Act**, Mass. G.L. c. 93A, §1, *et seq.*

(a) Defendants were engaged in trade or commerce as defined by G.L. c. 93A.

51

(b) Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market which includes Massachusetts, by affecting, fixing, controlling and/or maintaining at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in Massachusetts and took efforts to conceal their agreements from Plaintiff and members of the Damages Class.

(c) Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Massachusetts; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Massachusetts; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(d) As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class were injured and are threatened with further injury.

(e) By reason of the foregoing, Defendants engaged in unfair competition and unfair or deceptive acts or practices, in violation of G.L. c. 93A, §2. Defendants' and their co-conspirators' violations of Chapter 93A were knowing or willful, entitling Plaintiff and members of the Damages Class to multiple damages.

(f) Pursuant to Mass. Gen. Laws ch. 93A, §9, certain of the Defendants have or will be served with a demand letter, or, upon information and belief, such service of a demand letter was unnecessary due to the defendant not maintaining a place of business within the Commonwealth of Massachusetts or not keeping assets within the Commonwealth.

142. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **Michigan Consumer Protection Act**, Mich. Comp. Laws Ann. § 445.901, *et seq.*

(a)    Defendants engaged in the conduct described herein in connection with the sale of HDD Suspension Assemblies in trade or commerce in a market that includes Michigan.

(b)    Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in Michigan, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiff and members of the Damages Class.

(c)    Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies.  The concealed, suppressed, and omitted facts would have been important to Plaintiff and members of the Damages Class as they related to the cost of HDD Suspension Assemblies they purchased.

(d)    Defendants misrepresented the real cause of price increases and/or the absence of price reductions in HDD Suspension Assemblies by making public statements that were not in accord with the facts.

(e)    Defendants' statements and conduct concerning the price of HDD Suspension Assemblies were deceptive as they had the tendency or capacity to mislead Plaintiff and members of the Damages Class to believe that they were purchasing HDD Suspension Assemblies at prices established by a free and fair market.

CLASS ACTION COMPLAINT

(f) Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Michigan; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Michigan; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(g) The foregoing acts and practices constituted unfair, unconscionable, or deceptive acts or practices in violation of the Michigan Consumer Protection Act.

(h) As a direct and proximate result of the above-described unlawful practices, Plaintiff and members of the Damages Class suffered ascertainable loss of money or property.  Accordingly, Plaintiff and members of the Damages Class seek all relief available under the Michigan Consumer Protection Act.

143.  Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **Minnesota Consumer Fraud Act**, Minn. Stat. § 325F.68, *et seq.*

(a) Defendants engaged in the conduct described herein in connection with the sale of HDD Suspension Assemblies in trade or commerce in a market that includes Minnesota.

(b) Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in Minnesota, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiff and members of

54

the Damages Class.

(c)     Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies.  The concealed, suppressed, and omitted facts would have been important to Plaintiff and members of the Damages Class as they related to the cost of HDD Suspension Assemblies they purchased.

(d)     Defendants misrepresented the real cause of price increases and/or the absence of price reductions in HDD Suspension Assemblies by making public statements that were not in accord with the facts.

(e)     Defendants' statements and conduct concerning the price of HDD Suspension Assemblies were deceptive as they had the tendency or capacity to mislead Plaintiff and members of the Damages Class to believe that they were purchasing HDD Suspension Assemblies at prices established by a free and fair market.

(f)     Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Minnesota; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(g)     As a direct and proximate result of the above-described unlawful practices, Plaintiff and members of the Damages Class suffered ascertainable loss of money or property.  Accordingly, Plaintiff and members of the Damages Class seek all relief available under the Minnesota Consumer Fraud Act.

144. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **Missouri Merchandising Practices Act**, Mo. Rev. Stat. § 407.010, *et seq.*

(a)  Plaintiff and the Damages Class purchased HDD Suspension Assemblies for personal, family, or household purposes.

(b)  Defendants engaged in the conduct described herein in connection with the sale of HDD Suspension Assemblies in trade or commerce in a market that includes Missouri.

(c)  Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in Missouri, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiff and members of the Damages Class.

(d)  Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies.  The concealed, suppressed, and omitted facts would have been important to Plaintiff and members of the Damages Class as they related to the cost of HDD Suspension Assemblies they purchased.

(e)  Defendants misrepresented the real cause of price increases and/or the absence of price reductions in HDD Suspension Assemblies by making public statements that were not in accord with the facts.

(f)  Defendants' statements and conduct concerning the price of HDD Suspension Assemblies were deceptive as they had the tendency or capacity to mislead Plaintiff and members of the Damages Class to believe that they were

purchasing HDD Suspension Assemblies at prices established by a free and fair market.

(g)    Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Missouri; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Missouri; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(h)    The foregoing acts and practices constituted unlawful practices in violation of the Missouri Merchandising Practices Act.

(i)    As a direct and proximate result of the above-described unlawful practices, Plaintiff and members of the Damages Class suffered ascertainable loss of money or property.

(j)    Accordingly, Plaintiff and members of the Damages Class seek all relief available under Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…," as further interpreted by the Missouri Code of State Regulations, 15 CSR 60-7.010, *et seq.*, 15 CSR 60-8.010, *et seq.*, and 15 CSR 60-9.010, *et seq.*, and Mo. Rev. Stat. § 407.025, which provides for the relief sought in this count.

145. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **Montana Unfair Trade Practices Act**, Mont.

Code, §§ 30-14-201 to -225.

    (a)    Members of this Damages Class purchased HDD Suspension Assemblies for personal, family, or household purposes.

    (b)    Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Montana; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

    (c)    During the Class Period, Defendants' illegal conduct substantially affected Montana commerce and consumers.

    (d)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury.

    (e)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code, §§ 30-14-201 to -225, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

146. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **Nebraska Consumer Protection Act**, Neb. Rev. Stat. § 59-1602, *et seq*.

    (a)    Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout

Nebraska; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce and consumers.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury.

(d)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1602, *et seq*., and, accordingly, Plaintiff and members of the Damages Class seek all relief available under Neb. Rev. Stat. § 59-1614.

147.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **Nevada Deceptive Trade Practices Act**, Nev. Rev. Stat. § 598.0903, *et seq*.

(a)    Defendants engaged in the conduct described herein in connection with the sale of HDD Suspension Assemblies in trade or commerce in a market that includes Nevada.

(b)    Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in Nevada, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiff and members of the Damages Class.

(c)    Defendants concealed, suppressed, and omitted to disclose material facts to

Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies. The concealed, suppressed, and omitted facts would have been important to Plaintiff and members of the Damages Class as they related to the cost of HDD Suspension Assemblies they purchased.

(d)  Defendants misrepresented the real cause of price increases and/or the absence of price reductions in HDD Suspension Assemblies by making public statements that were not in accord with the facts.

(e)  Defendants' statements and conduct concerning the price of HDD Suspension Assemblies were deceptive as they had the tendency or capacity to mislead Plaintiff and members of the Damages Class to believe that they were purchasing HDD Suspension Assemblies at prices established by a free and fair market.

(f)  Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Nevada; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nevada; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(g)  The foregoing acts and practices constituted deceptive trade practices in violation of the Nevada Deceptive Trade Practices Act.

(h)  As a direct and proximate result of the above-described unlawful practices, Plaintiff and members of the Damages Class suffered ascertainable loss of money or property. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Neb. Rev. Stat. § 598.0993.

148.  Defendants have engaged in unfair competition or unfair, unconscionable, or

60

deceptive acts or practices in violation of the **New Hampshire Consumer Protection Act**, N.H. Rev. Stat. Ann. tit. XXXI, § 358-A, *et seq.*

   (a)   Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

   (b)   During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce and consumers.

   (c)   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury.

   (d)   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. Ann. tit. XXXI § 358-A, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under N.H. Rev. Stat. Ann. tit. XXXI § 358-A:10 and 358A:10-a.

149.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **New Mexico Unfair Practices Act**, N.M. Stat. § 57-12-1, *et seq.*

   (a)   Defendants and their co-conspirators agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at non-competitive and artificially inflated levels, the prices at which HDD Suspension Assemblies were sold, distributed or obtained in New Mexico and took efforts to conceal their agreements from Plaintiff and members of the

1   Damages Class.

2   (b)   The aforementioned conduct on the part of Defendants constituted

3   "unconscionable trade practices," in violation of N.M. Stat. § 57-12-3, in that

4   such conduct, *inter alia*, resulted in a gross disparity between the value

5   received by Plaintiff and the members of the Damages Class and the prices

6   paid by them for HDD Suspension Assemblies as set forth in N.M. Stat. § 57-

7   12-2E.  Plaintiff were not aware of Defendants' price-fixing conspiracy and

8   were therefore unaware that they were being unfairly and illegally

9   overcharged.  There was a gross disparity of bargaining power between the

10   parties with respect to the price charged by Defendants for HDD Suspension

11   Assemblies.  Defendants had the sole power to set that price and Plaintiff had

12   no power to negotiate a lower price.   Moreover, Plaintiff lacked any

13   meaningful choice in purchasing HDD Suspension Assemblies because they

14   were unaware of the unlawful overcharge and there was no alternative source

15   of supply through which Plaintiff' could avoid the overcharges.  Defendants'

16   conduct with regard to sales of HDD Suspension Assemblies, including their

17   illegal conspiracy to secretly fix the price of HDD Suspension Assemblies at

18   supra-competitive levels and overcharge consumers, was substantively

19   unconscionable because it was one-sided and unfairly benefited Defendants at

20   the expense of Plaintiff and the public.   Defendants took grossly unfair

21   advantage of Plaintiff. The suppression of competition that has resulted from

22   Defendants' conspiracy has ultimately resulted in unconscionably higher

23   prices for consumers so that there was a gross disparity between the price paid

24   and the value received for HDD Suspension Assemblies.

25   (c)   Defendants' unlawful conduct had the following effects: (1) HDD Suspension

26   Assemblies price competition was restrained, suppressed, and eliminated

27   throughout New Mexico; (2) HDD Suspension Assemblies prices were raised,

28

CLASS ACTION COMPLAINT

fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiff and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and the members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(d)  During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers.

(e)  As a direct and proximate result of the unlawful conduct of Defendants, Plaintiff and the members of the Damages Class have been injured and are threatened with further injury.

(f)  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.*, and, accordingly, Plaintiff and the members of the Damages Class seek all relief available under N.M. Stat. Ann. § 57-12-10.

150.  Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **New York Deceptive Acts and Practices Law**, N.Y. Gen. Bus. Law § 349, *et seq.*

(a)  Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed or obtained in New York and took efforts to conceal their agreements from Plaintiff and members of the Damages Class.

(b)  Defendants and their co-conspirators made public statements about the prices of HDD Suspension Assemblies and products containing HDD Suspension Assemblies that Defendants knew would be seen by New York consumers; such statements either omitted material information that rendered the statements that they made materially misleading or affirmatively

misrepresented the real cause of price increases for HDD Suspension Assemblies and products containing HDD Suspension Assemblies; and Defendants alone possessed material information that was relevant to consumers, but failed to provide the information.

(c)  Because of Defendants' unlawful trade practices in the State of New York, New York consumer class members who indirectly purchased HDD Suspension Assemblies were misled to believe that they were paying a fair price for HDD Suspension Assemblies or the price increases for HDD Suspension Assemblies were for valid business reasons; and similarly situated consumers were potentially affected by Defendants' conspiracy.

(d)  Defendants knew that their unlawful trade practices with respect to pricing HDD Suspension Assemblies would have an impact on New York consumers and not just the Defendants' direct customers.

(e)  Defendants knew that their unlawful trade practices with respect to pricing HDD Suspension Assemblies would have a broad impact, causing consumer class members who indirectly purchased HDD Suspension Assemblies to be injured by paying more for HDD Suspension Assemblies than they would have paid in the absence of Defendants' unlawful trade acts and practices.

(f)  The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

(g)  Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout New York; (2) HDD Suspension Assemblies prices were raised,

CLASS ACTION COMPLAINT

fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(h)    During the Class Period, Defendants marketed, sold, or distributed HDD Suspension Assemblies in New York, and Defendants' illegal conduct substantially affected New York commerce and consumers.

(i)    During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed HDD Suspension Assemblies in New York.

(j)    Plaintiff and members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349 (h).

151.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **North Carolina Unfair Trade and Business Practices Act**, N.C. Gen. Stat. § 75-1.1, *et seq*.

(a)    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed or obtained in North Carolina and took efforts to conceal their agreements from Plaintiff and members of the Damages Class.

(b)    Defendants' price-fixing conspiracy could not have succeeded absent deceptive conduct by Defendants to cover up their illegal acts. Secrecy was integral to the formation, implementation and maintenance of Defendants' price-fixing conspiracy. Defendants committed inherently deceptive and self-concealing actions, of which Plaintiff could not possibly have been aware.

Defendants and their co-conspirators publicly provided pre-textual and false justifications regarding their price increases. Defendants' public statements concerning the price of HDD Suspension Assemblies created the illusion of competitive pricing controlled by market forces rather than supra-competitive pricing driven by Defendants' illegal conspiracy. Moreover, Defendants deceptively concealed their unlawful activities by mutually agreeing not to divulge the existence of the conspiracy to outsiders, conducting meetings and conversations in secret, confining the plan to a small group of higher-level officials at each company and avoiding the creation of documents which would reveal the antitrust violations.

(c)     The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

(d)     Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(e)     During the Class Period, Defendants marketed, sold, or distributed HDD Suspension Assemblies in North Carolina, and Defendants' illegal conduct substantially affected North Carolina commerce and consumers.

CLASS ACTION COMPLAINT

(f)    During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed HDD Suspension Assemblies in North Carolina.

(g)    Plaintiff and members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under N.C. Gen. Stat. § 75-16.

152.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **North Dakota Unfair Trade Practices Law**, N.D. Cent. Code § 51-10, *et seq.*

(a)    Defendants engaged in the conduct described herein in connection with the sale of HDD Suspension Assemblies in trade or commerce in a market that includes North Dakota.

(b)    Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in North Dakota, which conduct constituted a fraudulent or deceptive act or practice and caused substantial injury to Plaintiff and members of the Damages Class.

(c)    Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies. The concealed, suppressed, and omitted facts would have been important to Plaintiff and members of the Damages Class as they related to

1    the cost of HDD Suspension Assemblies they purchased.

2    (d)    Defendants misrepresented the real cause of price increases and/or the

3    absence of price reductions in HDD Suspension Assemblies by making

4    public statements that were not in accord with the facts.

5    (e)    Defendants' statements and conduct concerning the price of HDD Suspension

6    Assemblies were deceptive as they had the tendency or capacity to mislead

7    Plaintiff and members of the Damages Class to believe that they were

8    purchasing HDD Suspension Assemblies at prices established by a free and

9    fair market.

10    (f)    Defendants' unlawful conduct had the following effects: (1) HDD Suspension

11    Assemblies price competition was restrained, suppressed, and eliminated

12    throughout North Dakota; (2) HDD Suspension Assemblies prices were

13    raised, fixed, maintained, and stabilized at artificially high levels throughout

14    North Dakota; (3) Plaintiff and members of the Damages Class were deprived

15    of free and open competition; and (4) Plaintiff and members of the Damages

16    Class paid supra-competitive, artificially inflated prices for HDD Suspension

17    Assemblies.

18    (g)    As a direct and proximate result of the above-described unlawful practices,

19    Plaintiff and members of the Damages Class suffered ascertainable loss of

20    money or property.  Accordingly, Plaintiff and the members of the Damages

21    Class seek all relief available under N.D. Cent. Code § 51-10-06.

22    153.    Defendants have engaged in unfair competition or unfair, unconscionable, or

23    deceptive acts or practices in violation of the **Oregon Unlawful Trade Practices Act**, Or. Rev.

24    Stat. § 646.605, *et seq.*

25    (a)    Defendants engaged in the conduct described herein in connection with the

26    sale of HDD Suspension Assemblies in trade or commerce in a market that

27    includes Oregon.

28

68

CLASS ACTION COMPLAINT

(b)     Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in Oregon, which conduct constituted unlawful trade practices by employing unconscionable tactic in connection with the sale of HDD Suspension Assemblies, and caused substantial injury to Plaintiff and members of the Damages Class.

(c)     Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies.  The concealed, suppressed, and omitted facts would have been important to Plaintiff and members of the Damages Class as they related to the cost of HDD Suspension Assemblies they purchased.

(d)     Defendants misrepresented the real cause of price increases and/or the absence of price reductions in HDD Suspension Assemblies by making public statements that were not in accord with the facts.

(e)     Defendants' statements and conduct concerning the price of HDD Suspension Assemblies were deceptive as they had the tendency or capacity to mislead Plaintiff and members of the Damages Class to believe that they were purchasing HDD Suspension Assemblies at prices established by a free and fair market.

(f)     Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Oregon; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Oregon; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages

Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(g) As a direct and proximate result of the above-described unlawful practices, Plaintiff and members of the Damages Class suffered ascertainable loss of money or property. Accordingly, Plaintiff and the members of the Damages Class seek all relief available under Or. Rev. Stat. § 646.638.

154. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **Rhode Island Unfair Trade Practice and Consumer Protection Act**, R.I. Gen. Laws §§ 6-13.1-1, *et seq.*

(a) Members of this Damages Class purchased HDD Suspension Assemblies for personal, family, or household purposes.

(b) Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in Rhode Island.

(c) Defendants deliberately failed to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business consumer, Defendants breached that duty by their silence. Defendants misrepresented to all consumers during the Class Period that Defendants' HDD Suspension Assemblies prices were competitive and fair.

(d) Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode

70

1    Island; (3) Plaintiff and members of the Damages Class were deprived of free

2    and open competition; and (4) Plaintiff and members of the Damages Class

3    paid supra-competitive, artificially inflated prices for HDD Suspension

4    Assemblies.

5    (e)    As a direct and proximate result of the Defendants' violations of law, Plaintiff

6    and members of the Damages Class suffered an ascertainable loss of money

7    or property as a result of Defendants' use or employment of unconscionable

8    and deceptive commercial practices as set forth above. That loss was caused

9    by Defendants' willful and deceptive conduct, as described herein.

10    (f)    Defendants' deception, including their affirmative misrepresentations and

11    omissions concerning the price of HDD Suspension Assemblies, likely misled

12    all consumers acting reasonably under the circumstances to believe that they

13    were purchasing HDD Suspension Assemblies at prices set by a free and fair

14    market. Defendants' affirmative misrepresentations and omissions constitute

15    information important to Plaintiff and members of the Damages Class as they

16    related to the cost of HDD Suspension Assemblies they purchased.

17    (g)    Defendants have engaged in unfair competition or unfair or deceptive acts or

18    practices in violation of Rhode Island Gen. Laws. § 6- 13.1-1, *et seq.*, and,

19    accordingly, Plaintiff and members of the Damages Class seek all relief

20    available under that statute.

21    155. Defendants have engaged in unfair competition or unfair, unconscionable, or

22    deceptive acts or practices in violation of **South Carolina Unfair Trade Practices Act**, S.C.

23    Code Ann. § 39-5-10, *et seq.*

24    (a)    Defendants' combinations or conspiracies had the following effects: (1) HDD

25    Suspension Assemblies price competition was restrained, suppressed, and

26    eliminated throughout South Carolina; (2) HDD Suspension Assemblies

27    prices were raised, fixed, maintained, and stabilized at artificially high levels

28

throughout South Carolina; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)  During the Class Period, Defendants' illegal conduct had a substantial effect on South Carolina commerce.

(c)  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Ann. §§ 39-5-10, *et seq.*, and, accordingly, Plaintiff and the members of the Damages Class seek all relief available under that statute.

156.  Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **South Dakota Deceptive Trade Practices and Consumer Protection Law**, S.D. Codified Laws § 37-24, *et seq.*

(a)  Defendants engaged in the conduct described herein in connection with the sale of HDD Suspension Assemblies in trade or commerce in a market that includes South Dakota.

(b)  Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in South Dakota, which conduct constituted a deceptive act or practice, and caused substantial injury to Plaintiff and members of the Damages Class.

(c)  Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension

Assemblies. The concealed, suppressed, and omitted facts would have been important to Plaintiff and members of the Damages Class as they related to the cost of HDD Suspension Assemblies they purchased.

(d)   Defendants misrepresented the real cause of price increases and/or the absence of price reductions in HDD Suspension Assemblies by making public statements that were not in accord with the facts.

(e)   Defendants' statements and conduct concerning the price of HDD Suspension Assemblies were deceptive as they had the tendency or capacity to mislead Plaintiff and members of the Damages Class to believe that they were purchasing HDD Suspension Assemblies at prices established by a free and fair market.

(f)   Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Dakota; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(g)   As a direct and proximate result of the above-described unlawful practices, Plaintiff and members of the Damages Class suffered ascertainable loss of money or property. Accordingly, Plaintiff and the members of the Damages Class seek all relief available under S.D. Codified Laws § 37-24-31.

157. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **Utah Consumer Sales Practices Act**, Utah Code Ann. § 13-11-1, *et seq.*

(a)   Defendants engaged in the conduct described herein in connection with the

73

sale of HDD Suspension Assemblies in trade or commerce in a market that includes Utah.

(b)  Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in Utah, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiff and members of the Damages Class.

(c)  Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies.  The concealed, suppressed, and omitted facts would have been important to Plaintiff and members of the Damages Class as they related to the cost of HDD Suspension Assemblies they purchased.

(d)  Defendants misrepresented the real cause of price increases and/or the absence of price reductions in HDD Suspension Assemblies by making public statements that were not in accord with the facts.

(e)  Defendants' statements and conduct concerning the price of HDD Suspension Assemblies were deceptive as they had the tendency or capacity to mislead Plaintiff and members of the Damages Class to believe that they were purchasing HDD Suspension Assemblies at prices established by a free and fair market.

(f)  Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Utah; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Utah; (3)

CLASS ACTION COMPLAINT

Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(g) As a direct and proximate result of the above-described unlawful practices, Plaintiff and members of the Damages Class suffered ascertainable loss of money or property. Accordingly, Plaintiff and the members of the Damages Class seek all relief available under Utah Code Ann. § 13-11-19(5) and 13-11-20.

158. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **Vermont Consumer Fraud Act**, Vt. Stat. Ann. tit. 9, § 2453, *et seq.*

(a) Title 9 of the Vermont Statutes generally governs commerce and trade in Vermont. Chapter 63 thereof governs consumer protection and prohibits, inter alia, unfair methods of competition, unfair and deceptive trade acts and practices, and antitrust violations such as restraints of trade and monopolization. Vt. Stat. Ann. tit. 9, § 2453(a).

(b) Defendants and their co-conspirators agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Vermont by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in Vermont.

(c) Defendants deliberately failed to disclose material facts to Plaintiff and members of the Damages Class concerning their unlawful activities and artificially inflated prices for HDD Suspension Assemblies. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business purchaser, Defendants breached that duty by their silence. Defendants misrepresented to all purchasers during

75

the Class Period that their HDD Suspension Assemblies prices were competitive and fair.

(d)    Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Vermont; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(e)    As a direct and proximate result of Defendants' violations of law, Plaintiff and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above.  That loss was caused by the Defendants' willful and deceptive conduct, as described herein.

(f)    Defendants' deception, including their omissions concerning the price of HDD Suspension Assemblies, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing HDD Suspension Assemblies at prices born by a free and fair market. Defendants' misleading conduct and unconscionable activities constitutes unfair competition or unfair or deceptive acts or practices in violation of the Vermont Consumer Fraud Act, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

159.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **Virginia Consumer Protection Act**, Va. Code Ann. § 59.1-196, *et seq.*

(a)    Defendants engaged in the conduct described herein in connection with the

sale of HDD Suspension Assemblies in trade or commerce in a market that includes Virginia.

(b)    Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in Virginia, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiff and members of the Damages Class.

(c)    Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies.  The concealed, suppressed, and omitted facts would have been important to Plaintiff and members of the Damages Class as they related to the cost of HDD Suspension Assemblies they purchased.

(d)    Defendants misrepresented the real cause of price increases and/or the absence of price reductions in HDD Suspension Assemblies by making public statements that were not in accord with the facts.

(e)    Defendants' statements and conduct concerning the price of HDD Suspension Assemblies were deceptive as they had the tendency or capacity to mislead Plaintiff and members of the Damages Class to believe that they were purchasing HDD Suspension Assemblies at prices established by a free and fair market.

(f)    Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Virginia; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout

Virginia; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(g)    As a direct and proximate result of the above-described unlawful practices, Plaintiff and members of the Damages Class suffered ascertainable loss of money or property.  Accordingly, Plaintiff and the members of the Damages Class seek all relief available under Va. Code Ann. § 59.1-204(A).

160.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **West Virginia Consumer Credit and Protection Act**, W. Va. Code § 46A-6-101, *et seq.*

(a)    Defendants engaged in the conduct described herein in connection with the sale of HDD Suspension Assemblies in trade or commerce in a market that includes West Virginia.

(b)    Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in West Virginia, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiff and members of the Damages Class.

(c)    Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies.  The concealed, suppressed, and omitted facts would have been important to Plaintiff and members of the Damages Class as they related to the cost of HDD Suspension Assemblies they purchased.

(d)  Defendants misrepresented the real cause of price increases and/or the absence of price reductions in HDD Suspension Assemblies by making public statements that were not in accord with the facts.

(e)  Defendants' statements and conduct concerning the price of HDD Suspension Assemblies were deceptive as they had the tendency or capacity to mislead Plaintiff and members of the Damages Class to believe that they were purchasing HDD Suspension Assemblies at prices established by a free and fair market.

(f)  Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout West Virginia; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(g)  As a direct and proximate result of the above-described unlawful practices, Plaintiff and members of the Damages Class suffered ascertainable loss of money or property.  Accordingly, Plaintiff and the members of the Damages Class seek all relief available under W. Va. Code § 46A-6-106.

**D.    Fourth Claim for Relief:  Unjust Enrichment**

161.  Plaintiff incorporates by reference the allegations in the preceding paragraphs.

162.  Plaintiff bring this claim under the laws of all states listed in the Second and Third Claims, supra.

163.  As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched.  Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of HDD Suspension

Assemblies.

164.    Defendants have benefited from their unlawful acts and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiff of the members of the Damages Class for HDD Suspension Assemblies.

165.    Plaintiff and the members of the Damages Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct. Plaintiff and the members of the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiff and the members of the Damages Class may make claims on a pro rata basis.

166.    Pursuit of any remedies against the firms from which Plaintiff and the members of the Damages Class purchased HDDs containing HDD Suspension Assemblies subject to Defendants' conspiracy would have been futile.

## XI.    **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays as follows:

167.    The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Classes;

168.    That the unlawful conduct, contract, conspiracy, or combination alleged herein be adjudged and decreed:

(a)    An unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

(b)    A *per se* violation of Section 1 of the Sherman Act;

(c)    An unlawful combination, trust, agreement, understanding and/or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth herein; and

(d)    Acts of unjust enrichment by Defendants as set forth herein.

CLASS ACTION COMPLAINT

169. Plaintiff and the members of the Damages Class recover damages, to the maximum extent allowed under such laws, and that a joint and several judgment in favor of Plaintiff and the members of the Damages Class be entered against Defendants in an amount to be trebled to the extent such laws permit;

170. Plaintiff and the members of the Damages Class recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

171. Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

172. Plaintiff and the members of the Damages Class be awarded restitution, including disgorgement of profits Defendants obtained as a result of their acts of unfair competition and acts of unjust enrichment;

173. Plaintiff and the members of the Classes be awarded pre- and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

174. Plaintiff and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

175. Plaintiff and members of the Classes have such other and further relief as the case may require and the Court may deem just and proper.

//

//

//

CLASS ACTION COMPLAINT

1

## XII.    DEMAND FOR JURY TRIAL

2      Plaintiff demands a trial by jury, pursuant to Federal Rule of Civil Procedure 38(b), of

3  all issues so triable.

4  Dated:  August 13, 2019                          */s/ Christopher T. Micheletti*
                                                    Christopher T. Micheletti (SBN 136446)
5                                                   Judith A. Zahid (SBN 215418)
                                                    Qianwei Fu (SBN 242669)
6                                                   **ZELLE LLP**
                                                    44 Montgomery Street, Suite 3400
7                                                   San Francisco, CA 94104
                                                    Telephone: (415) 693-0700
8                                                   Facsimile:  (415) 693-0770
                                                    cmicheletti@zelle.com
9                                                   jzahid@zelle.com
                                                    qfu@zelle.com
10

11
                                                    James R. Martin (SBN 173329)
12                                                  Jennifer Duncan Hackett (*pro hac vice*
                                                    *forthcoming*)
13                                                  Miriam R. Vishio (*pro hac vice forthcoming*)
                                                    **ZELLE LLP**
14                                                  1775 Pennsylvania Avenue, NW, Suite 375
15                                                  Washington, D.C. 20006
                                                    Telephone: (202) 899-4100
16                                                  jmartin@zelle.com
                                                    jhackett@zelle.com
17                                                  mvishio@zelle.com

18
                                                    *Attorneys for Plaintiff and the Proposed*
19                                                  *Indirect-Purchaser Classes*

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT